**Dated: November 21, 2018**
**The following is SO ORDERED:**

_____
Jimmy L. Croom
UNITED STATES BANKRUPTCY JUDGE

_____

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TENNESSEE**
**EASTERN DIVISION**

_____

In re

GILES NATHAN REPLOGLE and
BETTY CARROLL REPLOGLE,                              Case No. 17-12183

Debtors.                                                              Chapter   11

_____

**MEMORANDUM OPINION & ORDER RE: TENNESSEE BUSINESS AND INDUSTRIAL DEVELOPMENT CORPORATION'S LIMITED OBJECTION TO FHL INDUSTRIES' MOTION TO ENFORCE COURT'S DECEMBER 29, 2017 ORDER**

_____

The debtors in this case, Giles Nathan and Betty Carrol Replogle ("Debtors"), filed an individual chapter 11 petition for bankruptcy relief on October 2, 2017. At the time of filing the Debtors operated several businesses including Replogle Hardwood Flooring Company, LLC, and Replogle Enterprises, G.P. ("Affiliated Debtors"). Bankruptcy relief became necessary after the Affiliated Debtors' operations decreased. (Mot. To Sell at 2, ECF No. 39.) Although the Debtors believed the Affiliated Debtors' business could be

1

restructured successfully, they felt they would not be able to do so themselves given their age. (*Id.*) Consequently, the Debtors filed a "Motion for Authority to Sell or Transfer Assets Pursuant to 11 U.S.C. § 363 Free and Clear of Liens, Claims and Encumbrances" ("Sale Motion") on November 10, 2017. (*Id.*)

> Pursuant to the Sale Motion, Debtors sought permission
>
> to sell, convey, transfer, assign and/or deliver to the Buyer certain personal property owned by the Debtors, along with substantially all of the assets owned by the Affiliated Debtors (the "Purchased Assets"). Specifically, with respect to their assets, the Debtors propose only to sell assets that relate to the operation of the Affiliated Debtors, to include commercial real estate upon which the Affiliated Debtors operate (i.e., no personal residential nor other commercial real estate not utilized by the Affiliated Debtors is within the scope of this motion).

(*Id.*) Fox Hardwood Company, LLC ("FHL") offered to buy "substantially all of the assets of the Affiliated Debtors, and certain listed assets of the Debtors, in exchange for payment of $1,300,000." (*Id.* at 3.) Of this price, $500,000 was "allocated for the equipment used in the new sawmill line, $400,000 (between both the Affiliated Debtors and the Debtors) for the balance of the personalty, and $400,000 for real estate owned by the Debtors." (*Id.*) The equipment and property, both real and personal, being sold pursuant to the Sale Motion was listed on Exhibit B thereto. Within the Sale Motion, the Debtors acknowledged that Tennessee Business and Industrial Development Corporation ("BIDCO") held liens on some of the property the Debtors were seeking to sell. (*Id.*) The Debtors proposed selling the property free and clear of BIDCO's liens with the liens to attach to the sale proceeds. BIDCO holds a perfected first priority lien on the Debtors' real property and fixtures, including kiln buildings. (*See* ECF No. 131 at 1.) The only reference to "kilns" in Exhibit B to the Sale Motion is a "kiln debarker" on page 1. (ECF No. 39 at 1.)

The Debtors filed an amended Sale Motion ("Amended Motion") on December 6, 2017. (ECF No. 47.) Because of environmental concerns related to the real property, the Debtors proposed leasing the real property to FHL rather than selling it.

The Court heard the Amended Motion on December 7, 2017. The Court entered an "Order Granting Motion to Sell Assets Pursuant to 11 U.S.C. § 363 Free and Clear of Liens, Claims and Encumbrances" ("Sale Order") on December 28, 2017. (ECF No. 50.)

2

Pursuant to the order, the Debtors were permitted to "sell, convey, transfer, assign, and/or deliver…*the Personalty*, which includes all of the assets that relate to the operation of" the Affiliated Debtors.  (*Id.* at 2-3) (emphasis added). The Court granted the Debtors authority to sell the personal property used in the Affiliated Debtors' operations.  The Court did not, however, grant the Debtors authority to sell any real property. (*Id.* at 3.) The Sale Order provided that the Court "retains jurisdiction to enforce the terms of this Order, to determine the lien rights of any secured creditors that might attach to the proceeds of this sale, or to determine any disputes regarding this Order."  (*Id.*)

In furtherance of the Sale Order, the Debtors entered into an Asset Purchase Agreement ("APA") with FHL on January 11, 2018.  (ECF No. 121-1.) The APA states that Debtors would sell FHL "their personal property….[which] includes, but is not limited to, those items set forth on Exhibit A and Exhibit B attached hereto. Specifically excluded from Personal Property shall be the items set forth on Exhibit C."  (*Id.* at 2.)  Exhibit A to the APA includes a long, itemized list of equipment, vehicles, and machinery. (*Id.* at 6.) The only reference to "kiln" in Exhibit A is the "kiln debarker."  (*Id.*)  Exhibit B to the APA states that the Debtors were selling FHL the

> [f]urniture, *fixtures,* equipment, office and janitorial supplies that are used in connection with Seller's business and located at 9875 Highway 79 South, Henry Tennessee 38231, 2030 Lumber Road Henry, Tennessee (or other addresses used by Company Sellers).

(*Id.* at 9) (emphasis added).

On October 9, 2018, FHL filed an "Expedited Motion to Enforce Court's December 29, 2017 Order" ("Enforcement Motion").  (ECF No. 121.)  FHL contended that it purchased "all of the Debtors' assets that relate to the operation of the Affiliated Debtors" pursuant to the December 28, 2017 Sale Order. (*Id.* at 1.)  FHL has scheduled a widely-advertised auction of the equipment and personal property they purchased from the Debtors for December 7, 2018, and December 8, 2018.  FHL asserted that the Debtors are attempting to interfere with the auction by claiming that they own a large portion of the property FHL plans to auction.  (*Id.* at 2.)

BIDCO filed a limited objection to FHL's Enforcement Motion on November 6, 2018. (ECF No. 131.)  BIDCO objected to the Enforcement Motion "to the extent FHL

3

intends to auction real property, fixtures, or anything that could be viewed as or found to be a fixture by this Court." (*Id.*)  As stated *supra*, the Debtors' real property and fixtures attached thereto are BIDCO's collateral.  BIDCO contended that the list of items to be auctioned next month includes kiln buildings in which BIDCO has a security interest.

FHL filed a Memorandum of Law in response to BIDCO's objection on November 14, 2018.  (ECF No. 139.)  FHL asserted that:

> the kilns were property of Replogle Hardwood Flooring, LLC in Case No. 17-12172.  FHL purchased all of Replogle Hardwood Flooring, LLC's assets, without objection from BIDCO.  Therefore, it is too late for BIDCO to assert that the kilns could not be sold to FHL.

(*Id.* at 2) (footnote omitted).  FHL also asserted that "[e]ven aside from BIDCO's waiver of its right to object to the sale of the kilns to FHL, BIDCO is incorrect that the kilns are fixtures.  Kilns of this type are commonly sold apart from the land." (*Id.*)

The Debtors filed a "Response in Opposition to" FHL's Enforcement Motion on November 14, 2018.  (ECF No. 140.)  The Debtors asserted that the only personal property FHL purchased was that property set forth in the Sale Motion and the exhibits attached thereto.

The Court conducted a hearing on FHL's Enforcement Motion and the objections/responses thereto on November 15, 2018.  After reviewing the proof and the terms of the Sale Order, and considering the arguments made at the hearing, the Court granted FHL's motion as to the personal property which the Court determined to include all of the personal property assets that relate to the operation of the affiliated Debtors.  The Court took the issue of whether the kiln buildings were personal property or fixtures attached to the real property under advisement.

Exhibit B to the APA presents a problem for the parties on this issue.  Pursuant to the December 28, 2017 Order, the Court only gave the Debtors authority to sell personal property.  (*See* ECF No. 50.)  The real property was specifically excluded from the sale by the Amended Sale Motion and the Order.  (*See* ECF Nos. 47 & 50.)  In Tennessee, a fixture is part of the real property to which it is attached. Tenn. Code Ann. § 66-11-101(5).  Consequently, to the extent that the APA goes outside the bounds of the Court's granted

4

authority in the Sale Order, it is void. Therefore, in this case, the Court must determine whether a kiln used for industrial purposes is considered personal property or a fixture/improvement to real property. For the following reasons, the Court concludes that the kilns at issue in this case are fixtures attached to real property and were not included in the sale of the Debtors' assets to FHL.

To ensure an efficient and correct analysis, it is imperative to address the statutes concerning industrial machinery, which would warrant classifying the kilns as personal property, and those concerning fixtures/improvements, which would warrant classifying them as real property. Tennessee Code Annotated § 67-6-102(44) defines "Industrial Machinery" as

> (A)(i) Machinery, apparatus and equipment with all associated parts, appurtenances and accessories, including hydraulic fluids, lubricating oils, and greases necessary for operation and maintenance, repair parts and any necessary repair or taxable installation labor therefor, that is necessary to, and primarily for, the fabrication or processing of tangible personal property for resale and consumption off the premises[.]

Section 66-11-101(5) defines "Improvement" as

> the result of any action or any activity in furtherance of constructing, erecting, altering, repairing, demolishing, removing, or furnishing materials or labor for any building, structure, appurtenance to the building or structure, fixture, bridge, driveway, private roadway, sidewalk, walkway, wharf, sewer, utility, watering system, or other similar enhancement, or any part thereof, on, connected with, or beneath the surface…. As the context requires, "improvement" also means *the real property* thus improved[.]

(emphasis added). "'Real property' includes real estate, lands, tenements and hereditaments, corporeal and incorporeal, and *fixtures and improvements* thereon[.]" Tenn. Code Ann. § 66-11-101(13) (emphasis added). By these definitions, the kiln structures at issue in this case appear to be an improvement to the real property.

In Tennessee, the test for whether property is considered personalty or a fixture, "is said to be the intention with which [property] is connected with realty. If it is intended to be removable at the pleasure of the owner, it is not a fixture." *Hickman v. Booth,* 173 S.W. 438 (1915). Property will meet this test only if it is "so attached to the freehold that, from the intention of the parties and the uses to which they are put, [it is] presumed to be

5

permanently annexed, or a removal thereof would cause serious injury to the freehold." *Id.*

The two leading cases in Tennessee that address the classification of industrial kilns use the same test to determine the nature of the property. In *Tibbals Flooring Co. v. Huddleston*, the Tibbals Flooring Company attempted to classify their industrial kilns as personal property in order to avoid paying a higher tax on their real property assets. *Tibbals Flooring Co. v. Huddleston*, 891 S.W.2d 196, 197 (1994). According to the Tennessee Supreme Court,

> A dry kiln is a building constructed of a concrete floor base, double panel walls, consisting of an exterior piece of aluminum and an interior piece of aluminum, with insulation between the two, and a metal roof, similarly constructed, containing several fans and vents….It cannot be characterized as [industrial machinery defined as:] "machines functioning as a unit." Nor can it appropriately be considered [an apparatus defined as:] "a collection of component parts 'designed for a specific mechanical or chemical action or operation….'" [T]he dry kiln itself is simply the structure that houses the machines…a dry kiln cannot reasonably be described as "equipment" which has been specifically defined as excluding buildings….Although possible, disassembly of the dry kiln would require a crew of workers and a 50-foot boom truck.

*Id.* at 197-99. Alternatively, in *Manufacturing Ventures LLC v. Custom Kilns, Inc.,* a contract disagreement arose between the parties about the purchase and installation of certain kilns. *Mfg. Ventures LLC v. Custom Kilns, Inc.,* No. 06-2600-JPM-tmp, 2008 WL 11414590 (W.D. Tenn. Apr. 18, 2008). The *Custom Kilns* Court determined the kilns were personal property as they were classified as equipment. *Id.* at *7. There, the *Custom Kilns* Court stated, "[T]he kiln structure, although somewhat like a building, is not intended for the 'permanent benefit' of the real property." *Id.* at *8. The *Custom Kilns* Court distinguished its decision from *Tibbals Flooring Co.* by stating that the kiln in question in that case involved, "an already-existing kiln," whereas the kilns in *Custom Kilns* were never installed. *Id.* at *11, n. 9. The divide therefore appears to rest on whether or not the kilns have been installed, what the intention is behind their installation, and the difficulty of their removal or relocation.

In the present case, the Court must determine whether the kilns at issue fall under the personal or real property umbrella.  BIDCO submitted a short video to the Court of

6

one of the kilns at issue in this case as Trial Exhibit 4.  The kiln in the video has clearly been assembled and installed on the real property. (Tr. Ex. 4.) It sits on top of a concrete slab, appears to be approximately 20 feet tall, and is covered by a corrugated metal roof. (*Id.*)  In its "Memorandum of Law (Post-Hearing) for the Court Concerning Fixtures," BIDCO asserts that the kilns are "attached to a boiler and electrical outfits" and that "additional components such as fans, heaters, and kiln controls are affixed to the" kilns. (ECF No. 141 at 2.) BIDCO also asserts that the kilns "are sealed to the cement" and are insulated. (*Id.*) The Court cannot attest to these observations based on the video alone; however, neither the Debtors nor FHL rebutted these factual assertions.

Under the test set forth by the Tennessee Supreme Court in *Hickman v. Booth,* 173 S.W. 438 (1915), the Court concludes that the use of the kilns in the Affiliated Debtors' sawmill business demonstrates an intention to treat the kilns as an improvement affixed to the real property.  The Affiliated Debtors' businesses were dependent on the availability of good quality lumber.  Part of insuring the quality of the wood meant reducing the moisture content of the lumber.  Consequently, it only makes sense that the kilns were installed as a permanent improvement to the property. The fact that the Debtors leased the real property to another lumber company bolsters this conclusion.  The decision to lease the property to another lumber company shows an intention to maintain the same use of the property.  Thus, the kilns were an improvement and an asset of the realty. Lastly, based on the video submitted by BIDCO, the Court presumes that removal of the kilns would require the assistance of machinery and would take more than a few minutes. Therefore, the Court concludes that the kilns at issue in this case are sufficiently and permanently installed like the kilns in *Tibbals Flooring Co. v. Huddleston*.

For these reasons, the Court concludes that the kilns in the present case must be considered an improvement to, or a fixture of, the Debtors' real property. Consequently, the inclusion of "fixtures" in Exhibit B to the APA exceeds the terms of the Court's Sale Order and is void.  The Court further concludes that the Debtors did not sell the kilns to FHL and they may not be included in the auction scheduled for December 7, 2018, and December 8, 2018.

Therefore, the Court hereby **SUSTAINS** TN BIDCO's Limited Objection to FHL Industries' Expedited Motion to Enforce Court's December 29, 2017 Order.

**IT IS SO ORDERED.**

Mailing List

Debtor
Giffin S. Dunham, attorney for Debtors
U.S. Trustee
William J. Hardegree, attorney for TN BIDCO
Jerry P. Spore, attorney for TN BIDCO
Lewis Cobb, attorney for TN BIDCO
Michael G. Abelow, attorney for FHL Industries, LLC
Monica Simmons-Jones, assistant United States Attorney